This is Armand. Mr. Hills. Good morning. May it please the court and counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office and I represent Mr. Armand. He raises two issues on appeal. One of the issues has been conceded by the government and that is to the improper imposition of supervised release conditions. So if the court doesn't have questions on that issue, I'll turn to the remaining issue on the appeal. The remaining issue is whether the 108-month sentence that was imposed on Mr. Armand was correctly imposed and we argued four bases to show why it was not. First is that the 108-month sentence reflected the judge's mistaken view that it wasn't within guideline sentence and in fact it was not. The guideline range in this case was 84 to 105 months. So that error by itself, that mistaken sense of what the appropriate guideline range was demonstrates a reversible error in this case. The second problem with the imposition of the 108-month sentence is that because it was above guideline sentence, there had to be a justification given for the increased punishment that was imposed and there was none that was given. But are you talking now just about that three months? Yes. Between 105 and 108. Yes and I recognize that it's relatively small but nevertheless it is an above guideline sentence and the justification has to be given, none was. So that in our view is an additional grounds to reverse. Right. Next there would be a problem in our view about the crack, powder, cocaine disparity argument that Mr. Armand made. The district court concluded that there's a guideline and therefore the sentence should be within the guideline range which for all the other reasons we say there's a problem with the conclusion but in respect to the exercise of meaningful discretion for the crack, powder, cocaine. Is the district judge required to address such arguments that ask him to reject a guideline? There has to be meaningful consideration even if it is policy disagreement, yes. And I thought we had said a number of times that those are arguments that the district judge does not need to address expressly. Stock arguments need not be expressly addressed. The district court need not say much in exercising its discretion to reverse a policy, excuse me, to follow the guidelines and not exercise discretion to disagree with the policy determinations of the sentencing condition but something has to be said and the district court said nothing. How about I agree with the guidelines? Is that enough? I think saying I agree with the guidelines is not enough. More needs to be said. How much more? The guidelines. This would be a pretty, what you're asking for there seems like quite an innovation in our sentencing appellate review if we're asking district judges to get into debates and defend the guidelines. I don't think it requires much debate and little defense. How much has to be said then? Well, when the relevant standard is meaningful consideration, I can't give you a number of words or a number of sentences but there has to be something that said nothing was said here. So, as a benchmark, nothing is too little. I don't have the impression that the powder sagal in this case. He emphasized or he discussed other other factors he thought. I think though, your honor, that demonstrates our point is that while he was focused on some things that led him to impose a sentence of 108 months, there are still other arguments that would have been important for the defense that he'd consider those and the crackpotter cocaine disparity would be a huge one and the judge didn't consider that at all and we think that's an abuse of some consideration. It should be meaningful consideration and here there was no consideration. But he wouldn't have had to give a lighter sentence if he had said there's no meaningful distinction between powder and crackpotter. Absolutely correct, your honor. No dispute there but he had to say something to let us know that he had considered it and he didn't and it was a principle and meritorious argument that was made by Mr. Armand. Was it argued to him that that he was implicitly accepting that a crack offense is more serious than a powder offense? I don't think that you can make that conclusion based on how little was said in this case. It was something that was significantly raised in the sentencing memorandum by Mr. Armand and virtually no attention was given to it by the district court other than to say there's a guideline. Other than to say what? There's a guideline. Oh. The district court said there's a guideline and the district court got the guideline wrong on top of everything else. But if I can move to the final point and that is cooperation. The district court didn't consider cooperation either and we know under this court's jurisprudence and Knox it's something that the district court should have addressed. We also know that Roberts versus United States said that cooperation is very probative of the defendant's rehabilitation and so that should have been something that the district court addressed explicitly and it did not. There's no nothing in the record that showed the district court considered Mr. Armand's cooperation so that would be in our view the final reason of the four to vacate and remand for resentencing. Mr. Kellis could I ask you a few questions about other aspects of this. First you're asking for a complete resentencing. Yes the government's agreed to that. And does the defendant know that he could get more time in prison with a full resentencing? Your Honor we always advise our clients that they have the judge has as much discretion at the sentencing as at the resentencing so yes. Okay and with respect to the issue of supervised release the judge referred to Mr. Armand's record of compliance with parole and probation and federal pretrial release. He had a long record of problems with those right? Yes. Okay and then. Your Honor if I may, I have a bit of a problem with if if there are problems letting somebody stay out and continuing to engage in the ruinous conduct and using it against that person at sentencing we'd rather that that person not be left to their own devices in order to wind up with a higher sentence. So I do wish to make that point that Mr. Armand had he been revoked and the conditions of bond if the violation was brought to the court and the court revoked him he would be in a better situation than he wound up being. So he should have been revoked. I think so. He violated the conditions of bond. Was that argument made before the district judge before sentencing? I don't believe so. I wouldn't think so. That would be a tough argument to make. So not having taken that sort of Queen's Gambit prior to sentencing it's a little tough to make that argument now I would think. But there are you familiar with our courts decisions in Armour and Douglas recently? Yes. On some of the conditions of supervised release that you've criticized here but which were upheld in Armour and Douglas correct? Yes. And you pointed out in your brief I on the question about whether somebody on supervised release can be ordered to answer questions by the probation officer and I thought you said he's not on parole or probation or maybe that was the Fourth Amendment yeah he's not been given parole or probation in exchange for diminished Fourth Amendment protections and I'm that that seems unlikely to me he's on supervised release why doesn't he have diminished Fourth Amendment protections? Because there's not the quid pro quo that there is in the other context of parole and probation. Why not? The alternative is a longer sentence in prison. No I don't believe so. Sure as long as he's under the statutory maximum. That's an available option to the judge it's not an alternative it's not a necessary requirement. Well we're going to hear argument in another case this morning where the defense has argued in essence that the the judge didn't do enough to help the defendant reintegrate into society or prepare to reintegrate into that's what supervised release is intended to do right? It's supposed to be its primary function but in practical effect it seems to be additional policing powers that are exercised by this probation office that is in one sense an arm of the court and another law enforcement and we've got a lot of rights that seem to be lost in the mix. Well I mean I know that you you've argued in a number of cases in essence that we need to treat conditions of criminal statutes in terms of the precision that's required and I'm wondering if you can direct us to any instances where defendants have had supervised release revoked and they've been sent to prison for solely violations such as whether somebody has associated with felons left the district gone to a place where drugs are sold and so forth. Yes. Where is that happening? Without a new crime? Yes. Where is that happening? District courts in the Central District of Illinois. I have personally represented individuals whose the association with the felon was listed as one of the bases to revoke. Not sure it's listed but was there also a new crime? No but that's our point is that you have conduct that is not criminal and they get revoked for it. Let me make sure my question is very precise. Are people being revoked without some proof of dirty drug tests or other independent crimes? Yes. Your Honor, I'm surprised. We've had cases like that. Yeah a person went across, you know, we had a case a woman went out of the district in order to work in a nightclub. There wasn't any criminal activity. I cannot recall cases by name. They aren't cases that were necessarily appealed but there are sentences that were imposed and the conduct and the basis for the revocation were things like leaving the state which to me is peculiar. As a person on parole you have freedom, I think, to go within the state's borders but as a citizen who's on supervised release you are limited federally to go within a judicial district as opposed to being able to travel through the state. Worse than the restriction on leaving the state is when you're not allowed to leave the district without the probation officer's consent because who knows what the district borders are? Who knows when you leave the Northern I was about to make the same point, Your Honor. My clients have no idea that if they cross from the Central District of Illinois into LaSalle County that they have now violated supervised release. Not to mention there's a fundamental right to travel that's apparent from Supreme Court authority. It's available to citizens of the United States. It's somehow been restricted by people who are writing conditions of supervised release and judges who decide to revoke individuals. But I see I'm out of time unless the court has any questions. Okay, thank you Mr. Hillings. Thank you. Mr. Floor. Good morning, Your Honors, and may it please the court, counsel. My name is Philip Floor and I'm appearing on behalf of the United States in this matter. With respect to the sentencing issue, it's the government's position that the error with regard to the 108-month sentence was harmless. Well, I don't know why you say that, because it's just three months? No, Your Honor, because of the record that the district court created indicates extensive discussion about the the sentencing factors as to why the court arrived at that sentence. The district court stated up front that it had reviewed the PSR and the supplement. But you didn't say there was no error. You said, how would an error that led to a longer sentence be harmless? Your Honor, because the error that's alleged is the district court's understanding of the sentencing guideline range, which in this case was 84 to 105 months, and the district court made a comment that he that he believed that the sentence he was about to impose was within that range. So if insofar as that... But that implies that he wouldn't have imposed it if he had known what the range was. And that means an extra three months prison for this, for our man. So why is that harmless? Well, in fact, Your Honor, that what the district court said is that even if the range was much lower, even if it accepted the crack-powder ratio and the sentence was, or the range was 46 to 57 months, it still would have imposed that same 108 month sentence. So I think what the district court was saying is that... But then you're saying there's no error. I don't understand. What was the error? The error, Your Honor, was the district court's statement that it believed that the sentence it was about to impose was within the range. And so it's a, the error relates to the district court's... But don't we want to know whether if he had been told that he was outside the range, he might have said, well, actually I was meant to stay within the range, so I'll reduce it to 105. How do we know that he wouldn't have done that? But, Your Honor, I think what he said is that the, regardless of the range, that he regarded other sentencing factors as being more significant. And that even if the range was much lower, he said 46 to 57 months, he still would have imposed the same sentence for a series of reasons regarding the defendant's criminal history, his general history and characteristics, the need to protect the public, the need to afford for adequate deterrence. Those were the factors that the district court believed were more significant. The range, he said... Then why did he say, if it was irrelevant to him whether it was within the range, why did he say it was within the range? Your Honor, I think it's clear that he was mistaken or he misspoke about his understanding of the range when he made that comment. Neither party raised it and in all candor, Your Honor, seeing it obviously in the record, it's very clear but I don't recall him making that comment or perhaps I might have done differently. But neither party made any reference to it at that point. And I think in part, he had spoken at great length regarding the defendant's history and he had said in connection with the crack-powder ratio that he just did not feel that that was a significant factor. He felt that the history and characteristics of the defendant, his lengthy pattern of recidivism were the factors that he felt were significant. He stressed the need to incapacitate the defendant, he expressed the need to protect the public from future crimes of this defendant. Those were the factors that the court relied upon much more so than the sentencing guideline range in this case. So the 84 to 105 months, that is the range in the parties, that was the party's understanding going into the hearing. But the district court, right from the outset, had said on several occasions during the sentencing hearing that there are other factors that were far more significant than the quality or quantity of the drug. The district court also said the single most important thing was a defendant's history. The district court also said that he felt that there are other quote non-guideline factors that were significant that were not amenable to arithmetic calculation. Did the district judge, was he interested at all in the question of whether crack is more serious, crack offense more serious than a powder offense? Your Honor, the district court's discussion of that issue was fairly brief. He immediately discussed his other factors were more significant. He did, and I would counter the defense argument to some extent, there wasn't no discussion. It was just very brief discussion and essentially he said that he was expressing deference to Congress that the guideline and the laws relating to the 18 to 1 ratio had been established and that in his view there was no reason to question those and that he was going to simply rely on the guidelines. That was also a segue for him to then transition into the things that were most important to him. And again, that's the history and characteristics of the defendant and other what he described as non-guideline factors that weren't amenable to arithmetic calculation. And that was the point at which he spoke for approximately 17 minutes about, you know, extensively about the defendant's time as a juvenile, a number of serious offenses including violence and home invasion. He also then, you know, discussed the mitigation report that the defense counsel submitted and he came back to an ultimately imposing sentence, again stressing the importance of the history and characteristics of the defendant, the need to promote respectful law, affording adequate deterrence, and protecting the public. And so in this sense, the sentencing range is just but one factor under 3553A and it's clear that the district court believed that the other factors were far more compelling than the district court's case or the defendant's case. There's no indication as in some other cases that have been decided where the similar issue has arisen like Bartlett, that the district court pegged its sentence of 108 months to any of the guideline ranges. In fact, the district court emphasized that it was justified by the other 3553A factors separate and apart from the guidelines. And again, the district court also talked about the incapacitation or that there would be a need for, there will likely be additional suffering if this defendant is not incapacitated and there was a, quote, good chance of repetitive acts. And so, Your Honors, under these circumstances, any misunderstanding regarding the applicable advisory guideline range played no part in the government's or the district court's determination of the sentence of imprisonment. And that's why, Your Honor, we believe that the error on that issue was harmless. And it demonstrates that the breadth of the district court's analysis demonstrates that its sentence, its chosen sentence of 108 months, was a result of a deliberate choice rather than some mistake regarding the applicable guidelines range. And for these reasons, the district court's determination . . . How many make a reasoned distinction between 105 and 108? I'm sorry, Your Honor? How could anyone make a reasoned distinction between 105 and 108 months? How could the district court make that distinction? Yeah, how could anybody? Your Honor, I don't know. I mean, it's three months. It's totally arbitrary. Three months is . . . Where would you look for, where would you look for information as to whether a person's sentence should be 105 months or 106 months? Your Honor, because the district court did not make those distinctions, it's difficult for me to try to infer into that. But 108 months is nine years, so it might have been the judge's determination . . . A round number, you mean? That nine years was a sentence that . . . Rounded up, right? Well, again, I don't know that he rounded up from 105 months. I don't believe that the sentence that was imposed was in any way pegged to the 84 to . . . So you say he wanted to give him nine years? Yes, Your Honor, and he wanted to give him nine years for the myriad reasons that he expressed on the defendant, the need to protect the public, and the other 3553A factors that we've discussed. And it's our view that the district court's determination with respect to that sentence should be should be affirmed. And with regard to the . . . You agree, though, that the entire sentence has to be vacated because of the supervised release issues, correct? That's correct, Your Honor. So all this debate about what was said about 108 months or 105 months, that's all in front of the if we agree with you, right? Yes, Your Honor. The resentencing . . . Nothing in the law prevents him from imposing the same sentence, a lower sentence, or a higher sentence at this point. Yes, Your Honor. The district court, upon remand, should review the conditions of supervised release and properly set forth its explanation and perhaps reconsider the sentence of imprisonment in light of the supervised release that it imposes. However, it is our position that the similar 108-month sentence, for the same reasons it did in the first instance, that that would be a reasonable sentence. Okay, well, thank you, Mr. Fleur. Mr. Hillis, do you have anything further? I think the additional time, but the judge never said that he would have imposed the same sentence regardless, and the judge very clearly said that he was trying to give a sentence within the guideline range, and yet he didn't. And as far as repetitive acts and so forth, if the district court is genuinely concerned that my client can never be compliant and follow rules, he has many months in imprisonment, and I'll have a disciplinary record, I think that'd be highly probative to the district court's analysis under Pepper v. United States to determine whether the sentence should be lower, and also the crack disparity . . . Had that argument been embraced, there's a 37 to 46-month sentence, I think, that could have resulted if the district court had meaningfully considered that. We hope that he will this time, and furthermore, as was recently pointed out in United States v. Gregory Sanford and other cases, if district courts appropriately consider their discretion and recognize that supervised release is a punishment that's in addition to the amount of incarceration that one serves, perhaps this judge would be inclined, with all these numerous conditions of to treat it more in the sense of parole, as Judge Hamilton sort of indicated that has been done historically, that this person's sentence should be lower than what it is now, have the period of supervised release, but also the conditions, and therefore if he's violated, he faces the possibility of additional incarceration for not being compliant with those rules. I have nothing further. Thank you. Okay, well thank you very much, and we thank the defenders for their efforts on behalf of the district court.